Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 1 of 33 PageID #: 122

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

| | |
|---|---|
| CARLOS PALAGUACHI, ROBERT SANTIAGO, AHMED RADWAN, and WARREN PAYNE, *individually and on behalf of others similarly situated,* <br><br> Plaintiffs, <br><br> -against- <br><br> UNITED PARCELS SERVICE, INC., <br> Defendant. | Index Number: <br> **Plaintiff designates Kings County as the venue for the trial.** <br><br><br> DEMAND FOR JURY TRIAL CLASS ACTION COMPLAINT UNDER N.Y. C.P.L.R. LAW § 901 |

To the above-named Defendant (s):

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs' Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York): and in case your failure to appear or answer, judgment will be taken for the relief demanded herein.

A COPY OF THIS SUMMONS WAS FILED WITH THE CLERK OF THE COURT, KINGS COUNTY ON _____ IN COMPLIANCE WITH N.Y. C.P.L.R. Law §§ 305 AND 306(a).

Brooklyn, New York
Dated: September 2, 2025

By:  Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

1

Case 1:25-cv-05548-CHK Document 1-4 Filed 10/02/25 Page 2 of 33 PageID #: 123

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

| | |
|---|---|
| CARLOS PALAGUACHI, ROBERT SANTIAGO, AHMED RADWAN, and WARREN PAYNE, *individually and on behalf of others similarly situated,*<br><br>Plaintiffs,<br><br>-against-<br><br>UNITED PARCEL SERVICE, INC.,<br>Defendant. | Index Number:<br>**Plaintiff designates**<br>**Kings County**<br>**as the venue for the trial.**<br><br>DEMAND FOR JURY TRIAL<br>CLASS ACTION COMPLAINT<br>UNDER N.Y. C.P.L.R. LAW § 901 |

Carlos Palaguachi ("Plaintiff Palaguachi" or "Mr. Palaguachi"), Robert Santiago ("Plaintiff Santiago" or "Mr. Santiago"), Ahmed Radwan ("Plaintiff Radwan" or "Mr. Radwan"), and Warren Payne ("Plaintiff Payne" or "Mr. Payne") (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, by and through their attorneys Tyrone A. Blackburn, Esq., of T.A. Blackburn Law, PLLC, Rodney S. Diggs, Esq., of Ivie McNeill Wyatt Purcell & Diggs, and Kevin Mahoney, Esq. and Berkeh Alemzadeh of Mahoney Law Group, APC, allege upon knowledge as to themselves and belief as to all other matters against Defendant United Parcel Service, Inc. d/b/a UPS ("Defendant" or "UPS") as follows:

## NATURE OF ACTION

New York Labor Law Class Claims:

1. This action arises under the New York Labor Law ("NYLL"), including but not limited to N.Y. Lab. Law §§ 190 et seq., 650 et seq., 663 et seq., 195(1), 195(3), 195(4), 198(1-d), and the supporting regulations at N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2, as well as CPLR § 901, to recover unpaid wages, overtime wages, spread-of-hours pay, statutory penalties, liquidated damages, interest, attorneys' fees, and costs on behalf of Plaintiffs and a putative class of similarly situated employees.

2. Plaintiffs and the putative Class are or were employed as Delivery Drivers for UPS in New York. Defendant, acting through its managers, agents, and supervisors, including but not limited to William Grey and Lloyd Hall, implemented uniform policies and practices that unlawfully deprived drivers of wages guaranteed by the NYLL.

2

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 3 of 33 PageID #: 124

3. Beginning on or about January 28, 2018, and continuing through the present, Defendant has maintained and enforced policies and practices that required delivery drivers to work in excess of forty (40) hours per week without paying required overtime compensation at one-and-one-half times the regular rate, and without compensating all straight-time hours worked, in violation of N.Y. Lab. Law § 652 and related provisions.

4. During the same period, the Defendant failed to provide Plaintiffs and class members with accurate wage statements that reflected all hours worked, rates of pay, and lawful overtime premiums, in violation of N.Y. Lab. Law § 195(3).

5. Plaintiffs and the putative Class therefore seek relief for Defendant's violations of the NYLL, including unpaid minimum wages, unpaid overtime, unpaid straight-time wages, spread-of-hours pay, statutory damages for wage-statement violations, liquidated damages, attorneys' fees, and costs.

6. Plaintiffs Palaguachi, Santiago, Radwan, and Payne bring this action on behalf of themselves, and all other delivery drivers employed by UPS in New York from January 28, 2018, through the present who have been similarly denied lawful wages and wage statements. Plaintiffs seek certification of this matter as a class action pursuant to CPLR § 901 to ensure that all affected employees may vindicate their rights under the NYLL.

## PRIOR FILING

7. On or about March 18, 2020, this case was filed in the Eastern District of New York, Case Name and Number: *Murray et al. v. UPS et al.*, 20-cv-1427 ("Federal Case").

8. On or about October 26, 2023, the Federal Case was dismissed without prejudice.

9. On January 28, 2024, the case was refiled in New York State Court, Kings County. *Daniel Moyle et al v. United Parcels Service, Inc.*, Index # 503187/2024.

10. On May 30, 2024, the *Daniel Moyle et al v. United Parcels Service, Inc.* case was removed to the United States District Court for the Eastern District of New York.

11. On May 19, 2025, Judge LaShann DeArcy Hall dismissed the case without prejudice due to the process servers' untimely service, which resulted in limiting the class window.

12. On August 20, 2025, the Clerk's Judgment was entered.

13. Pursuant to N.Y. C.P.L.R. Law § 205, a claim for anything other than "voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits" that is

3

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 4 of 33 PageID #: 125

dismissed without prejudice may be refiled as a new action within six months of its dismissal, provided that it was timely when originally filed. N.Y. C.P.L.R. Law § 205; *see Ross v. Jamaica Hosp. Med. Ctr.*, 122 A.D.3d 607, 607-08, 996 N.Y.S.2d 118 [2d Dept 2014]. *Bartholomew v. N.Y.C. Health & Hosps. Corp.*, 2023 NY Slip Op 32792(U), ¶ 3 (Sup. Ct.). Here, the Federal case was timely filed, and this refiled New York State case is also timely filed pursuant to *Bartholomew*.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over Defendant United Parcel Service, Inc. ("UPS") consistent with the requirements of due process and New York law. UPS conducts continuous and systematic business operations within the State of New York, including maintaining multiple package-delivery facilities, employing hundreds of workers, and deriving substantial revenue from its New York operations. UPS exercised control over Plaintiffs' and Class Members' employment within New York, thereby subjecting itself to the jurisdiction of this Court for all claims arising under the New York Labor Law.

15. Venue is proper in this Court pursuant to N.Y. C.P.L.R. LAW §§ 503 and 509 because a substantial part of the events and omissions giving rise to the claims occurred in Kings County. UPS employed plaintiffs in this County, UPS maintains active branches and operational facilities within this County, and the unlawful wage and hour practices challenged herein were implemented, directed, and enforced in this County.

## PARTIES

NYLL Plaintiffs:

16. Plaintiff Carlos Palaguachi resides in Bronx County, New York. Defendant United Parcel Service, Inc. ("UPS") employed Mr. Palaguachi as a delivery driver from approximately October 2017 until May 2018. Mr. Palaguachi regularly worked more than forty (40) hours per week but was not adequately compensated for all straight-time and overtime hours. Mr. Palaguachi seeks relief for wage violations that occurred on or after January 28, 2018, during the statutory class period.

17. Plaintiff Warren Payne resides in Kings County, New York. UPS employed Mr. Payne as a delivery driver from approximately August 2017 until June 2018. Mr. Payne routinely worked in excess of forty (40) hours per week without lawful overtime pay, and his wage statements failed to accurately reflect all hours worked. Mr. Payne seeks relief for wage violations occurring on and after January 28, 2018, during the statutory class period.

4

18. Plaintiff Robert Santiago resides in Kings County, New York. UPS employed Mr. Santiago as a delivery driver from approximately April 7, 2014, until October 18, 2020. Mr. Santiago routinely worked well over forty (40) hours per week, including workweeks in excess of eighty (80) hours, yet UPS failed to compensate him lawfully for all hours worked or provide accurate wage statements. Mr. Santiago seeks relief for wage violations occurring on and after January 28, 2018, during the statutory class period.

19. Plaintiff Ahmed Radwan resides in Kings County, New York. UPS employed Mr. Radwan as a delivery driver from approximately July 2018 until October 1, 2018. Throughout his employment, Mr. Radwan regularly worked more than forty (40) hours per week, was denied overtime compensation, and did not receive accurate wage statements. Mr. Radwan's entire employment occurred within the statutory class period, and he seeks relief for those violations.

20. Plaintiffs Palaguachi, Payne, Santiago, and Radwan each consent to serve as party plaintiffs pursuant to CPLR § 901 and bring these claims individually and in a representative capacity on behalf of all similarly situated delivery drivers employed by UPS in New York from January 28, 2018, through the present. Plaintiffs are adequate representatives whose claims are typical of the Class because each was subjected to UPS's uniform time-shaving, underpayment, and inaccurate wage-statement practices.

*Defendants*

21. Defendant United Parcel Service, Inc. ("UPS") is a corporation organized under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. At all relevant times, UPS has conducted continuous and systematic business in New York, deriving substantial revenue from its operations in this State.

22. UPS owns, operates, and controls multiple package-delivery facilities throughout New York, including, but not limited to, its location at 10401 Foster Avenue, Brooklyn, New York 11236, where the Plaintiffs were employed.

23. UPS qualifies as an "employer" under the New York Labor Law, N.Y. Lab. Law § 2(6), because it employed Plaintiffs and Class Members, maintained the power to hire and fire, determined work schedules, controlled terms and conditions of employment, and set the rates and methods of pay. At all relevant times, UPS directly and indirectly controlled the employment relationship of Plaintiffs and the Class.

5

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 6 of 33 PageID #: 127

## CLASS ACTION ALLEGATIONS

24. Plaintiffs bring this action pursuant to CPLR § 901 on behalf of themselves and a putative class defined as:

> **All persons who worked as delivery drivers for Defendant United Parcel Service, Inc. in the State of New York at any time from January 28, 2018, through the date of final judgment in this matter (the "Class").**

CPLR § 901(a) Prerequisites

25. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. UPS operates multiple package-delivery facilities across New York and employs hundreds of delivery drivers statewide. Class treatment is necessary to ensure efficient adjudication and uniform application of the law.

26. **Commonality.** Certification under CPLR § 901 is appropriate because common questions of law and fact predominate over individual issues, including but not limited to:

   a. Whether UPS failed to compensate Class Members for all hours worked at their regular rate of pay (**N.Y. Lab. Law § 191**).
   b. Whether UPS failed to pay Class Members overtime at one-and-one-half times their regular rate for hours worked over forty (40) in a workweek (**N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2**).
   c. Whether UPS failed to furnish Class Members with accurate wage statements with each payment of wages (**N.Y. Lab. Law § 195[3]**).
   d. Whether UPS failed to maintain and preserve true and accurate payroll records for the Class (**N.Y. Lab. Law § 195[4]**).
   e. Whether Defendants failed to provide Class Members with paystubs that accurately reflect their hours worked, rate of pay, and amount paid, as required by the NYLL [**NY CLS Labor § 195 [3]**].
   f. Whether UPS engaged in time-shaving, off-the-clock work, or other practices designed to deprive Class Members of earned wages, and
   g. The measure of damages, statutory penalties, liquidated damages, and interest owed to Plaintiffs and the Class.

27. **Typicality.** Plaintiffs' claims are typical of the claims of the Class because they arise from the same course of conduct by UPS, involve the same legal theories, and rely on substantially the same evidence. Plaintiffs and Class Members were all subject to UPS's uniform timekeeping, payroll, and compensation practices.

28. Defendant's corporate-wide policies and practices—including time-shaving, failure to pay overtime, and issuance of inaccurate wage statements—were applied consistently across New York delivery operations and injured all Class Members in the same manner.

29. UPS benefited financially from its unlawful wage and hour practices, which deprived Class Members of legally required wages and statutory protections.

6

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 7 of 33 PageID #: 128

30. **Adequacy.** Plaintiffs will fairly and adequately represent the interests of the Class. They have no conflicts with Class Members and seek relief that is coextensive with the relief sought by the Class.

31. Plaintiffs are represented by counsel experienced in complex employment litigation, wage and hour class actions, and collective actions. Counsel has the resources and expertise to vigorously prosecute this case on behalf of the Class.

32. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual class members lack the financial resources to bring separate actions against UPS, and separate litigation would risk inconsistent judgments, unnecessary expense, and duplicative proceedings.

33. The nature and extent of the class-wide injury—including unpaid wages, unpaid overtime, inaccurate wage statements, and statutory penalties—can be determined through common proof, and damages may be calculated using Defendant's payroll records, timekeeping systems, and other corporate records.

N.Y. C.P.L.R. LAW § 902 Factors

34. Certification is also appropriate under N.Y. C.P.L.R. LAW § 902 because the following factors weigh heavily in favor of class treatment:

    a. Interest of Class Members in Individual Control. Individual drivers have minimal interest in controlling separate actions, given the modest damages relative to the costs of litigation. Class treatment provides meaningful access to justice.

    b. Impracticability of Separate Actions. Prosecution of hundreds of separate actions would be inefficient, burdensome, and risk inconsistent outcomes.

    c. Extent and Nature of Existing Litigation. Plaintiffs are not aware of other active state court class litigation in New York covering this same period and claims. Concentrating all claims in this action promotes judicial economy.

    d. Desirability of Forum. Kings County is the appropriate forum because UPS operates facilities here, Plaintiffs worked here, and many Class Members reside here.

    e. Manageability. The case is manageable as a class action because liability turns on UPS's uniform payroll and timekeeping practices. These can be proven through common evidence such as electronic time records, payroll data, and company policies. Damages can be calculated using the Defendant's records and representative testimony.

7

Case 1:25-cv-05548-CHK   Document 1-4   Filed 10/02/25   Page 8 of 33 PageID #: 129

35. For all of the foregoing reasons, certification under CPLR §§ 901 and 902 is proper, and this case should proceed as a class action on behalf of the defined Class of delivery drivers.

## FACTUAL ALLEGATIONS
*Defendants Constitute Joint Employers*

36. Upon information and belief, Defendant UPS operates a package delivery service throughout New York State.

37. Defendant UPS possessed substantial control over Plaintiffs and the Class working conditions, wherein its policies and practices concerning Plaintiffs and Class Members' employment and compensation were uniformly implemented with respect to Plaintiffs and the Class.

38. Defendant UPS employed Plaintiffs, the Class, and all similarly situated employees, and is their employer within the meaning of N.Y. CLS CPLR § 901 et seq. and the NYLL.

39. In the alternative, Defendant UPS constitutes a single employer of the Plaintiff, the Class, and all similarly situated employees.

40. At all relevant times, Defendant UPS is the employer within the meaning of the NYLL.  The Defendant had the power to hire and fire, controlled the terms and conditions of employment, and determined the rate and method of compensation for the Plaintiffs and the Class.

*Defendants Engaged In Wage Theft*

41. Plaintiffs allege that Defendants stole hundreds of hours of overtime from Plaintiffs and the Class.

42. Plaintiffs further allege that many Class Members start work between 7 a.m. and 9 a.m. and punch out between 10 p.m. and 11 p.m., which amounts to working up to sixteen (16) hours per day at times.

    a.  Plaintiffs further allege that Plaintiffs and the Class worked anywhere from an average of ten (10) to sixteen (16) hours a day, which is a 5-day work week; Plaintiffs and the Class work an average of fifty (50) to eighty (80) hours a week.

43. Plaintiffs also allege that the Class, on average, worked six (6) days a week, which amounted to anywhere from eighty (80) to ninety (90) hours per week; however, Defendants failed to compensate Plaintiffs and the Class for all hours worked in a week.

44. Plaintiffs allege that they have first-hand knowledge of the scheme by Defendants to steal overtime hours from Plaintiffs and the Class.

8

INDEX NO. 530162/2025

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 9 of 33 PageID #: 130

RECEIVED NYSCEF: 09/03/2025

45. Plaintiffs allege that Defendants would access the GTS (Global Timecard System) and unilaterally change the delivery drivers' punch-in and punch-out times without authorization from the Class Members, thereby avoiding the need to pay both minimum and overtime wages.

46. Defendants' unlawful policies and/or practices worked solely for the benefit of Defendants, in that Defendants were able to retain unlawfully the wages of Plaintiffs and the Class for hours worked.

47. Plaintiffs further allege that Defendants engaged in a pattern and/or practice of manipulating Plaintiffs and Class Members' time, solely for the benefit of Defendants, which is in violation of the Department of Transportation ("DOT") rules and regulations and more specifically § 395.3 Maximum driving time for property-carrying vehicles. [**49 CFR 395.3**].

48. Plaintiffs also allege that Defendants knowingly and willfully required Plaintiffs and the Class to work beyond their allotted DOT hours.

*Individual Plaintiffs*

### THE WAGE AND HOUR PLAINTIFF'S

49. Plaintiffs Carlos Palaguachi, Robert Santiago, Ahmed Radwan, and Warren Payne are former employees of Defendant UPS who were employed in New York as package delivery drivers. Each performed the core functions of that position, including transporting and delivering parcels, interacting with customers, and working long shifts under Defendant's control.

50. According to UPS's Jobsite, the job description for Delivery Drivers is as follows:

> "This is a physical, fast-paced, outdoor position that involves continual lifting, lowering, and carrying packages that typically weigh 25 - 35 lbs. and may weigh up to 70 lbs. A DOT physical exam is required. Package Delivery Drivers must have excellent customer contact and driving skills. Some UPS facilities may require the ability to drive a delivery vehicle with a standard (manual) transmission. Qualified applicants must have a valid driver's license issued in the State where they live. Package Delivery Drivers are expected to comply with UPS appearance guidelines and wear the company-provided uniform."

51. Plaintiffs were fully qualified for their positions and performed these duties as required. Despite their demanding work schedules, they were systematically denied the wages, overtime premiums, and accurate wage statements required by the New York Labor Law ("NYLL").

52. Plaintiffs bring this action on behalf of themselves and a class of similarly situated delivery drivers under CPLR § 901, seeking damages for unpaid minimum wages, unpaid overtime,

9

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 10 of 33 PageID #: 131

failure to provide accurate wage statements, liquidated damages, prejudgment interest, attorneys' fees, and all other relief authorized by the NYLL.

## PLAINTIFF CARLOS PALAGUACHI

53. Plaintiff Carlos Palaguachi's work duties did not require either managerial discretion or independent judgment. He performed routine package delivery tasks under strict supervision.

54. From approximately October 2017 through May 2018, Mr. Palaguachi regularly worked more than forty (40) hours per week. His workweeks typically ranged from fifty (50) to eighty (80) hours, with daily shifts often lasting from 8:00 a.m. until 11:00 p.m., Sunday through Friday.

55. Mr. Palaguachi seeks relief only for wage and hour violations occurring on and after January 28, 2018, during the statutory class period.

56. Despite routinely working in excess of forty (40) hours per week, UPS failed to pay Mr. Palaguachi overtime compensation at one and one-half times his regular hourly rate, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.

57. Mr. Palaguachi's pay remained the same even when he was required to start earlier or work longer shifts due to staff shortages, without any overtime premium for the additional hours.

58. While his pay stubs reflected some hours worked, they did not accurately reflect all compensable time. UPS utilized an electronic timekeeping system, but managers routinely manipulated entries to reduce payable hours, thereby depriving him of wages.

59. UPS failed to furnish Mr. Palaguachi with accurate wage statements as required by NYLL § 195(3), omitting the true number of hours worked and corresponding rates of pay.

60. Upon information and belief, UPS management, including William Grey and other senior personnel, instructed Mr. Palaguachi to conceal automobile accidents and falsify delivery records.

61. As part of this scheme, he was directed to drive near a customer's home, scan a package, and return it to the truck without making delivery, thereby generating false delivery data to inflate performance metrics.

62. UPS also required Mr. Palaguachi to use his personal vehicle to deliver packages during peak periods and holidays, including Thanksgiving, Easter, and Christmas, without reimbursement for mileage, fuel, or related expenses. This practice unlawfully shifted UPS's operating costs onto employees and reduced Mr. Palaguachi's effective hourly rate below the statutory minimum wage.

10

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 11 of 33 PageID #: 132

## PLAINTIFF WARREN PAYNE

63. Plaintiff Warren Payne's work duties required neither managerial discretion nor independent judgment.  He performed routine package delivery functions under the direct control of UPS supervisors.

64. From approximately August 2017 through June 2018, Mr. Payne regularly worked well in excess of forty (40) hours per week.  His workweeks typically ranged from fifty (50) to eighty (80) hours, with daily shifts lasting from about 8:00 a.m. until 11:00 p.m., Sunday through Friday.

65. Mr. Payne seeks relief only for wage and hour violations occurring on and after January 28, 2018, during the statutory class period.

66. Despite working extensive overtime, UPS failed to pay him one-and-one-half times his regular hourly rate for hours worked beyond forty (40) in a workweek, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.

67. Mr. Payne's compensation did not increase when he was required to start earlier or work longer shifts due to staffing shortages, and he was not paid for all overtime hours worked.

68. Although his pay stubs included an "hours" column, they did not reflect the actual hours worked.  UPS used electronic timekeeping systems, but managers routinely altered or underreported recorded time to avoid paying overtime wages.

69. UPS failed to provide Mr. Payne with accurate wage statements, as required by NYLL § 195(3), and failed to provide proper notices regarding wage rates and overtime pay.

70. Upon information and belief, UPS managers instructed Mr. Payne to conceal automobile accidents and falsify delivery records.

71. Specifically, he was directed to falsely record delivery attempts by scanning packages near a customer's home and then returning them to the truck without attempting delivery, thereby creating the appearance of completed work.

72. Mr. Payne was also required to use his personal vehicle to deliver packages during peak periods and holidays, including Thanksgiving, Easter, and Christmas, without reimbursement for fuel, mileage, or related expenses.  This practice unlawfully shifted business costs to employees and reduced Mr. Payne's effective hourly rate below the statutory minimum wage.

11

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 12 of 33 PageID #: 133

## PLAINTIFF ROBERT SANTIAGO

73. Plaintiff Robert Santiago's work duties required neither managerial discretion nor independent judgment. He performed routine package delivery tasks under the close direction of UPS supervisors.

74. Mr. Santiago was employed by UPS from approximately April 7, 2014, through October 18, 2020. His claims in this action are limited to violations that occurred on or after January 28, 2018, within the statutory class period.

75. During that time, Mr. Santiago regularly worked well in excess of forty (40) hours per week, often between fifty (50) and eighty (80) hours, with daily shifts typically running from 8:00 a.m. until 11:00 p.m., Sunday through Friday.

76. Despite working extensive overtime, UPS failed to pay him one-and-one-half times his regular hourly rate for hours worked beyond forty (40) in a workweek, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.

77. Mr. Santiago's compensation did not increase when he was required to start earlier or work longer shifts due to staff shortages, and he was not paid for all additional hours worked.

78. Although his pay stubs included an "hours" column, they failed to reflect his actual hours worked. UPS maintained electronic timekeeping systems, but managers routinely altered or underreported recorded hours to suppress payroll costs.

79. UPS failed to provide Mr. Santiago with accurate wage statements reflecting his true hours and rates of pay, in violation of NYLL § 195(3). UPS also failed to provide proper notices of wage rates and overtime entitlements.

80. Upon information and belief, UPS managers instructed Mr. Santiago to conceal automobile accidents and to falsify delivery records.

81. Specifically, Mr. Santiago was directed to generate false delivery data by driving near a customer's home, scanning a package, and returning it to the truck without attempting delivery.

82. Mr. Santiago was further required to use his personal vehicle to deliver packages during peak periods and holidays, including Thanksgiving, Easter, and Christmas, without reimbursement for mileage, fuel, or related expenses. This practice unlawfully shifted Defendant's business costs onto employees and reduced his effective hourly wage below the statutory minimum.

12

INDEX NO. 530162/2025
Case 1:25-cv-05548-CHK   Document 1-4   Filed 10/02/25   Page 13 of 33 PageID #: 134
RECEIVED NYSCEF: 09/03/2025

**PLAINTIFF AHMED RADWAN**

83. Plaintiff Ahmed Radwan's work duties did not require either managerial discretion or independent judgment. He performed routine package delivery tasks under the direct control of UPS supervisors.

84. Mr. Radwan was employed by UPS from approximately July 2018 through October 1, 2018. His entire employment occurred within the statutory class period beginning January 28, 2018.

85. During this period, Mr. Radwan regularly worked well in excess of forty (40) hours per week, typically between fifty (50) and ninety (90) hours, with daily shifts running from about 8:00 a.m. until 11:00 p.m., Sunday through Friday.

86. Despite routinely working substantial overtime, UPS failed to pay him one-and-one-half times his regular hourly rate for hours worked over forty (40) in a workweek, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.

87. Mr. Radwan's pay did not increase when he was required to start earlier or work longer shifts due to staff shortages, and he was not paid for all additional hours worked.

88. Although his pay stubs contained an "hours" column, they did not reflect his actual hours worked. UPS maintained electronic timekeeping systems, but managers routinely manipulated or underreported hours to avoid paying overtime.

89. UPS failed to provide Mr. Radwan with accurate wage statements reflecting his true hours and rates of pay, in violation of NYLL § 195(3). UPS also failed to provide proper written notices regarding wage rates and overtime entitlements.

90. Upon information and belief, UPS managers instructed Mr. Radwan to conceal automobile accidents.

91. Specifically, Mr. Radwan was directed to falsify delivery records by scanning packages near a customer's home and returning them to the truck without making delivery, thereby creating false records of completed delivery attempts.

92. Mr. Radwan was also required to use his personal vehicle to deliver packages during peak and holiday periods, including Thanksgiving, Easter, and Christmas, without reimbursement for mileage, fuel, or related expenses. This practice unlawfully shifted UPS's business costs to employees and reduced their effective hourly wage below the statutory minimum.

13

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 14 of 33 PageID #: 135

## FIRST CAUSE OF ACTION
### New York Labor Law Claim
(On behalf of Plaintiff Palaguachi, Plaintiff Santiago, Plaintiff Radwan, Plaintiff Payne, and all similarly situated employees)

93. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

94. Plaintiffs bring this claim on behalf of themselves, and all similarly situated individuals who worked as package delivery drivers for UPS in New York at any time from January 28, 2018, through the date of final judgment.

95. CPLR § 901(a) provides the prerequisites for a class action. They are: a. One or more members of a class may sue or be sued as representative parties on behalf of all if:

   a. The Class is so numerous that the joinder of all members, whether otherwise required or permitted, is impracticable.
   b. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members.
   c. The claims or defenses of the representative parties are typical of the claims or defenses of the Class.
   d. The representative parties will fairly and adequately protect the interests of the Class and
   e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

96. " Whether a particular lawsuit qualifies as a class action rests within the sound discretion of the trial court. In exercising this discretion, a court must be mindful of our holding that the class certification statute should be liberally construed." (*Kudinov v. Kel-Tech Constr. Inc.*, 65 AD3d 481, 884 N.Y.S.2d 413 [1st Dept. 2009], citing *Englade v. HarperCollins Publrs., Inc.*, 289 AD2d 159, 734 N.Y.S.2d 176 [2002]).

97. The movant has the burden of establishing the prerequisites outlined in CPLR 901(a), *as noted in Kudinov, supra*. "Any error, if there is to be one, should be ... in favor of allowing the class action." (*Esplin v. Hirschi*, 402 F2d 94 [1968]).

### *Numerosity*

98. CPLR §901(a)(1) requires that the Class be so numerous that the joinder of all class members is impracticable.

99. There is no 'mechanical test' to determine whether ... numerosity has been met, nor is there a set rule for the number of prospective class members which must exist before a class is certified ... each case depends upon the particular circumstances surrounding the proposed Class and the Court should consider the reasonable inferences and common-sense assumptions from the

14

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 15 of 33 PageID #: 136

facts before it. *Friar v. Vanguard Holding Corp.*, 78 AD2d 83, 434 N.Y.S.2d 698 (2nd Dept 1980).

100.    The Class is so numerous that joinder of all members is impracticable. UPS employs hundreds of delivery drivers across multiple facilities throughout New York State. On information and belief, the Class consists of several thousand current and former drivers.

101.    Here, the Plaintiffs assert that the Defendants operate multiple package delivery facilities throughout New York.

102.    According to Defendant UPS's website, it operates Package Delivery Facilities in the following cities:



| | | | | | |
|---|---|---|---|---|---|
| Amsterdam | Corona | Hamilton | Maspeth | Pleasantville | Tarrytown |
| Angola | Cortland | Hampton Bays | Massapequa | Port Chester | Thornwood |
| Arcade | Cortlandt Manor | Hancock | Massena | Port Jefferson | Ticonderoga |
| Armonk | Cutchogue | Hannibal | Mattituck | Port Jefferson Station | Tonawanda |
| Arverne | Dansville | Harrison | Mechanicville | Port Jervis | Troy |
| Astoria | Deer Park | Harrisville | Medford | Port Washington | Uniondale |
| Attica | Delmar | Hastings On Hudson | Medina | Potsdam | Utica |
| Au Sable Forks | Depew | Hempstead | Merrick | Poughkeepsie | Vails Gate |
| Auburn | Dover Plains | Henrietta | Mexico | Prattsburgh | Valatie |
| Avon | Dunkirk | Herkimer | Middle Village | Prattsville | Valley Cottage |
| Ballston Spa | East Amherst | Hewlett | Middleburgh | Pulaski | Valley Stream |
| Batavia | East Aurora | Hicksville | Middletown | Queens Village | Vestal |
| Bath | East Concord | Highland Falls | Millerton | Queensbury | Victor |
| Bay Shore | East Elmhurst | Hilton | Mineola | Ravena | Waddington |
| Bayport | East Greenbush | Holbrook | Mohegan Lake | Red Hook | Wading River |
| Bayside | East Hampton | Hollis | Monroe | Rego Park | Wallkill |
| Bayville | East Islip | Honeoye | Montgomery | Rensselaer | Walton |
| Beacon | East Moriches | Honeoye Falls | Monticello | Rhinebeck | Wantagh |
| Bellerose | East Northport | Hoosick Falls | Morrisville | Richmond Hill | Wappingers Falls |
| Bellport | East Rockaway | Hopewell Junction | Mount Kisco | Ridgewood | Warrensburg |
| Binghamton | East Setauket | Hornell | Mount Vernon | Riverhead | Warsaw |
| Bohemia | East Syracuse | Horseheads | Nanuet | Rochester | Warwick |
| Boonville | Eastchester | Howard Beach | Naples | Rock Hill | Waterloo |
| Breezy Point | Elbridge | Hudson | Narrowsburg | Rockaway Beach | Watertown |
| Brentwood | Elmhurst | Hudson Falls | New Hartford | Rockaway Park | Waterville |
| Brewster | Elmira | Huntington | New Hyde Park | Rockville Centre | Watervliet |
| Bridgehampton | Elmont | Huntington Station | New Paltz | Rocky Point | Watkins Glen |
| Brockport | Elmsford | Hyde Park | New Rochelle | Rome | Wayland |
| Bronx | Endicott | Ilion | New York | Ronkonkoma | Webster |
| Bronxville | Endwell | Island Park | Newark | Roosevelt | Wellsville |
| Brooklyn | Fairport | Ithaca | Newburgh | Roslyn Heights | West Haverstraw |
| Buffalo | Falconer | Jackson Heights | Niagara Falls | Rouses Point | West Hempstead |
| Burnt Hills | Far Rockaway | Jamaica | North Babylon | Saint Albans | West Nyack |
| Cairo | Farmingdale | Jamestown | North Baldwin | Sanborn | West Sayville |
| Cambria Heights | Farmington | Johnson City | North Bellmore | Saranac Lake | West Seneca |
| Camden | Farmingville | Johnstown | North Tonawanda | Saratoga Springs | Westbury |
| Camillus | Ferndale | Kew Gardens | Northport | Saugerties | Westfield |
| Canandaigua | Floral Park | Kings Park | Northville | Savannah | Westhampton Beach |
| Canastota | Flushing | Kingston | Norwich | Scarsdale | White Plains |
| Canton | Forest Hills | Lake Luzerne | Oakland Gardens | Schenectady | Whitehall |
| Carmel | Franklinville | Lakewood | Oceanside | Seaford | Whitestone |
| Carthage | Freeport | Larchmont | Ogdensburg | Shelter Island Heights | Williamson |
| Catskill | Fresh Meadows | Latham | Olean | Shirley | Williston Park |
| Cedarhurst | Fulton | Lawrence | Oneida | Sidney | Windham |
| Center Moriches | Gansevoort | Levittown | Oneonta | Skaneateles | Woodhaven |
| Centereach | Garnerville | Lewiston | Ontario | Smithtown | Woodmere |
| Central Square | Geneseo | Liberty | Orchard Park | Sodus | Woodside |
| Central Valley | Geneva | Lindenhurst | Ossining | South Glens Falls | Woodstock |
| Chatham | Getzville | Little Neck | Oswego | South Hempstead | Wy Ntskill |
| Chester | Glen Cove | Liverpool | Oyster Bay | South Ozone Park | Yonkers |
| Chittenango | Glen Head | Lockport | Ozone Park | South Richmond Hill | Yorktown |
| Cicero | Glendale | Long Beach | Palmyra | South Salem | Yorktown Heights |
| Cincinnatus | Glenfield | Long Island City | Patchogue | South Salem | Yorkville |
| Clay | Glenmont | Lowville | Pawling | Speculator | Spring Valley |
| Clifton Park | Gloversville | Lynbrook | Pearl River | Springfield Gardens | |

16

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 17 of 33 PageID #: 138

103.    Upon information and belief, the facilities mentioned above employ over five hundred package drivers each.  Estimating that there are potentially over ten thousand (10,000) impacted drivers.

104.    "The threshold for the impracticability of joinder seems to be around forty" (*Galdamez v. Biordi Constr. Corp.*, 13 Misc. 3d 1224[A], 831 N.Y.S.2d 347, 2006 N.Y. Slip Op 51969[U] [2006], aff'd 50 A.D.3d 357, 855 N.Y.S.2d 104 [1st Dept 2008], citing *Dornberger v. Metropolitan Life Ins.  Co.*, 182 FRD 72, 77 (SD N.Y.1999; see also *Klakis v. Nationwide Leisure Corp.*, 73 A.D.2d 521, 522, 422 N.Y.S.2d 407 [1st Dept 1979]).  In *Galsamez*, the Plaintiff's affidavits estimated the Class consisted of between 30 and 70 workers.  In the affidavits, other members of the proposed Class were able to recall the names of between (14) fourteen and (22) of them.  The Appellate Division affirmed the lower Court's finding that the Plaintiff sufficiently established that the Class was so numerous that the joinder of all members was impracticable (*Galdamez v. Biordi Constr. Corp*, 50 AD3d 357, 855 N.Y.S.2d 104 [1st Dept 2008]).

105.    Here, the Defendants cannot deny that they employ over one hundred (100) package delivery drivers in over twenty (20) locations throughout the State of New York, as Plaintiffs allege that they worked in at least 4 four of those locations, working alongside over 100 individuals each during their employment.

106.    Therefore, the numerosity requirement has been met.

### *Commonality*

107.    CPLR §901(a)(2) requires that there are questions of law or fact common to the Class, which predominates over any questions affecting only individual members.

108.    " Commonality is not merely an inquiry into whether common issues outnumber individual issues but rather whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." (*Pludeman v. Northern Leasing Sys., Inc.*, 74 AD3d 420, 904 N.Y.S.2d 372 [1st Dept 2010], citing *Friar, supra*).  Class certification is appropriate even when there are questions of law or fact not common to the Class (*Pludemon, supra,* citing *Freeman v. Great Lakes Energy Partners, LLC*, 12 AD3d 1170, 1171, 785 N.Y.S.2d 640 [2004]).

17

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 18 of 33 PageID #: 139

109.    In this action, Plaintiffs, on behalf of the Class and all similarly situated employees, identify the following questions of law and fact common to all members of the putative Class without limitations:

a.    Whether UPS failed to compensate delivery drivers for all straight-time hours worked at their regular rate of pay.

b.    Whether UPS failed to pay overtime wages at one and one-half times the regular rate for hours worked over forty (40) per week.

c.    Whether UPS engaged in time-shaving, impermissible rounding, or off-the-clock practices to reduce the number of payable hours.

d.    Whether UPS failed to furnish accurate wage statements with each payment of wages.

e.    Whether UPS failed to maintain and preserve accurate payroll records for drivers, and

f.    Whether UPS's failure to reimburse drivers for use of personal vehicles during peak and holiday periods unlawfully reduced their effective wages below the statutory minimum; and

g.    Whether Defendants properly paid Plaintiffs and Class Members for all the spread of hours' premiums earned for workdays exceeding ten (10) hours.

110.    In determining whether an action should proceed as a class action, it is appropriate to consider whether the claims have merit (*Bloom v Cunard Line*, 76 AD2d 237, 240, 430 N.Y.S.2d 607 [1980]). However, this "inquiry is limited" (id.), and such threshold determination is not intended to be a substitute for summary judgment or trial (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481,482, 884 N.Y.S.2d 413 [2009]). Class action certification is thus appropriate if, on the surface, there appears to be a cause of action that is not a sham (*Brandon v Chefetz*, 106 AD2d 162, 168, 485 N.Y.S.2d 55 [1985]). *Pludeman, supra*.

111.    Here, the Plaintiffs have established common questions of law and fact that predominate over any questions affecting only individual members as to the alleged issues of time shaving, rounding down, wage statement violations, and spread of hours premium.

112.    The commonality is met when an employer "failed to pay the required prevailing wage and supplemental benefits owed to" their employees (*Stecko v RLIIns. Co.*, 121 AD3d 542, 543, 995 N.Y.S.2d 13 [1st Dept 2014] ["different trades are paid on a different wage scale and thus have different levels of damages does not defeat certification"]; see *Weinstein v Jenny Craig Operations, Inc.*, 138 AD3d 546, 547, 30 N.Y.S.3d 618 [1st Dept 2016] ["commonality of the claims will be found to predominate, even though the putative class members have different levels of damages"] [internal quotations omitted]; *Friar v Vanguard Holding Corp.*, 78 AD2d 83, 98, 434 N.Y.S.2d 698 [2d Dept 1980] [predominance is not identity or unanimity among class members, "[similarly, the fact that questions peculiar to each individual may remain after

18

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 19 of 33 PageID #: 140

resolution of the common questions is not fatal to the class action"]).  (*Lavrenyuk v. Life Care Servs.* 2021 N.Y. Misc Lexis 6027, aff'm 198 A.D.3d 569, 152 N.Y.S.3d 907).

113.    Therefore, the Plaintiff's element of commonality has been met.

### *Typicality*

114.    CPLR §901(a)(3) requires the claims or defenses of the representative parties to be typical of the claims or defenses of the Class.

115.    If it is shown that a plaintiff's claims derive "from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory ... [the typicality] requirement is satisfied" (*Friar* at 99,434 N.Y.S.2d 698; *see also Ackerman* at 201, 683 N.Y.S.2d 179; *Freeman* at 1171, 785 N.Y.S.2d 640).  Typicality does not require the identity of issues, and the typicality requirement is met even if the claims asserted by class members differ from those asserted by other class members (*Pruitt v. Rockefeller Cetr. Props.*, 167 A.D.2d 14, 22, 574 N.Y.S.2d 672 [1991]; S*uper Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 607, 517 N.Y.S.2d 764 [1987]). *Pludeman, supra*.

116.    Here, the Plaintiffs have demonstrated through numerous text messages and examples throughout this pleading that the Plaintiffs' claims are typical of the proposed Class, as the unlawful policy and practice as alleged by the Plaintiffs are the same or similar to that of the 20 + victims (as evidenced by the text messages asserted herein) who would be members of the purported Class.

117.    Therefore, the element of typicality has been met.

### *Adequacy*

118.    CPLR §901(a)(4) requires the representative parties to fairly and adequately protect the interests of the Class.

119.    If it is shown that a plaintiff's claims derive "from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory ... [the typicality] requirement is satisfied" (*Friar* at 99, 434 N.Y.S.2d 698; see also *Ackerman* at 201, 683 N.Y.S.2d 179; *Freeman* at 1171, 785 N.Y.S.2d 640).  Typicality does not require identity of issues, and the typicality requirement is met even if the claims asserted by class members differ from those asserted by other class members (*Pruitt v. Rockefeller Cetr. Props.*, 167 A.D.2d 14, 22, 574 N.Y.S.2d 672 [1991]; *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 607, 517 N.Y.S.2d 764 [1987]). *Pludeman, supra*.

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 20 of 33 PageID #: 141

120.   Here, the Plaintiffs have established that they can fairly and adequately protect the interests of the Class, as they are seeking the same relief as the Class Members, specifically the recovery of wages and damages suffered as a result of the Defendant's alleged unlawful policy and practice of time shaving, rounding down, wage statement violations, and spread of hours premium.

121.   Plaintiffs have further established that they are represented by counsel who are qualified and experienced in handling class action litigation and can provide a catalog of prior cases, similar in nature to the instant action, that their counsel has litigated.

### *Superiority*

122.   A class action is superior to other methods of adjudicating these claims. Individual drivers lack the resources to pursue their claims individually. The relatively modest value of individual wage claims compared to the cost of litigation makes class treatment the only realistic means for employees to vindicate their rights. Separate suits would create inefficiency, duplication, and a risk of inconsistent rulings.

123.   CPLR §901(a)(5) requires a class action that is superior to other available methods for the fair and efficient adjudication of the controversy. A class action is the "superior vehicle" for resolving wage disputes, since the damages allegedly suffered by an individual class member are likely to be insignificant, and the costs of prosecuting individual actions would result in the class members having no realistic day in court" (*Nawrocki*, 82 A.D.3d at 536; see also *Dabrowski*, 84 A.D.3d at 635). (*Stecko v RLI Inc. Co*, 121 AD3d 542, 995 N.Y.S.2d 13 [2014]).

124.   Plaintiffs have established that the controversy at issue involves wage disputes; therefore, the fifth element of CPLR § 901 (a) is established.

Evidence of UPS's Uniform Policies

125.   Plaintiffs allege that UPS maintained a company-wide policy of manipulating driver time records through its Global Timecard System ("GTS"). Managers and supervisors had the authority to alter punch-in and punch-out times, reduce recorded hours, and delete overtime entries.

126.   Plaintiffs and other drivers routinely discovered missing hours on their pay stubs. When questioned, managers admitted they could "fix" or "adjust" timecards at their discretion.

127.   Plaintiffs will introduce as evidence over twenty (20) text message exchanges between drivers and their supervisor, Fari Murray, demonstrating that drivers repeatedly requested

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 21 of 33 PageID #: 142

corrections to timecards and complained about missing overtime.  Representative examples include.

128.    Below is a list of text messages from drivers requesting payment for stolen overtime and straight time, sent to former UPS Employee and On-Road-Supervisor Fari Murray:

   a.   On or about August 17, 2017, at 9:05 a.m., a driver named Blackmon sent Mr. Murray text messages with a screenshot of the time that was reduced from his timecard.  His timecard reflected that he worked over 70 hours weekly, yet William Grey went into the GTS and reduced his hours to 57:13.

   b.   On or about November 7, 2017, at 7:18 p.m., Driver Li sent Mr. Murray a text message stating: Are u able to fix my time from Saturday?  I started at nine and left at 8:21 p.m."

   c.   On or about December 11, 2017, at 7:11 p.m., a driver named Creed sent Mr. Murray a text message stating the following: "Was Thursday 8th 7:00 to 21:47".  Creed followed up 2 days later, on December 13, 2017, at 11:31 a.m., stating the following: "Let me know if u can fix me hrs if not, I'll go to willi (referring to William Grey).

   d.   On or about May 3, 2018, and May 4, 2018, at 7:44 p.m. and 1:35 p.m., Driver Scott sent Mr. Murray a text message stating, "please fix my time" and "please fix my hrs, dude."

   e.   On or about May 5, 2018, at 3:59 p.m., Driver Qualis Townsend sent Mr. Murray the following text message: "can you fix my hours in from yesterday" and at 4:01 p.m., "smh they didn't put my hours in from the road yesterday."

   f.   On or about November 10, 2017, at 7:15 p.m., Driver Pritchard sent Mr. Murray the following text message: "Good morning, Fari. This is Pritchard.  Listen, Tuesday the 7th is still in unresolved.  It is showing as a scheduled day off.  Please help me.  Thank you." This driver worked on this day, and his whole timecard was deleted and set up as if he had the day scheduled off, not to work.

   g.   On or about October 27, 2017, and November 9, 2017, at 8:50 a.m. and 8:35 a.m., Driver Harris Solomon sent the following text messages to Mr. Murray: "10-25 (Wednesday) Im missing 2 hours I worked from 9:00 a.m.-8:30 p.m." and "Wednesday 9:00–6:15 p.m., checked timecard its 6 hours……pls correct."

   h.   On or about August 24, 2018, Mr. Murray received a text message from Oleg Gezner concerning his hours worked and missing overtime.  The message said: "Mon, Aug 20/18 8:20 a.m. -10:40 p.m.; Tue, Aug 21/18 8:40 a.m. – 11:13 p.m., Wed, Aug 22/18 8:40 a.m. – 11:34 p.m.; and Thu, Aug 23/18 8:40 a.m.-9:29 p.m.  In 4 days, this driver worked nearly 54 hours.  This driver was only paid for 40 hours.

        i.   A day later, the driver sent a follow-up message to Mr. Murray, "and take a look at my timecard before it is to late." "Don't forget to change my timecard when u get a chance."

   i.   On or about September 26, 2018, at 3:36 p.m., Mr. Murray received a text message from Driver Jackson: "Fix my timecard from yesterday 8:40-730 p.m." This was never fixed.

   j.   On or about August 22, 2018, at 12:02 p.m., Creed sent Mr. Murray a text stating, "Don't forget to put in the ½ hr u owe me." Creed followed up on August 24, 2018, at 8:34 p.m., stating, "Did u put that ½ hr u owe me."

21

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 22 of 33 PageID #: 143

k. On or about September 28, 2017, at 9:43 p.m., Mr. Murray received the following text message from Driver Rose Sheldon: "Farah please don't forget to put my hours in 9 a.m. 2027 thx".

l. On or about May 7, 2018, at 8:48 a.m., Mr. Murray received the following text message from a UPS driver: "Did u take care of the hr u owe me for last week"

m. On or about February 19, 2018, at 12:30 p.m., Mr. Murray received the following text message from UPS driver Creed: "I need u to change my timecard for last Thursday I started at 7:00 someone change it to 7:50".  At 8:00 p.m., Creed followed up: "Today is the last day to correct it, so it comes on this week check."

n. On or about January 18, 2018, at 1:14 p.m., Mr. Murray received the following text message from Creed: "Did u put in my missing hrs?" Four days later, on January 19, 2018, at 11:19 a.m., Creed followed up: "Don't forget me with some help." Mr. Murray responded, "Can only add 1 hour".  Creed replied, "so add 1 hour a week then."

o. On or about October 23, 2017, at 10:19 a.m., Mr. Murray received the following text message from UPS driver Clarke Anthony: "I got paid time only for 2 days, and I finished my assignment on both days I didn't take lunch those days I spoke to Willie."

p. On or about July 21, 2018, at 8:37 p.m., Mr. Murray received the following text message from UPS driver Cece: "Hey.. This dumb chick never put in my hour the last few times I worked I've been looking for her, but she don't be in.." At 8:38 p.m., Cece followed up with the following: "The way she talking to me right now, I'm about to come there and drag her Fari." Mr. Murray responded, "I'll take care if it when did u finish." Cece responded, "After 7:30, I think ask Lara" "thanks, you're the best."

q. On or about May 2, 2018, at 7:08 p.m., Mr. Murray received the following text message from UPS driver Calix: "You never put that time in for me, boss."

r. On or about July 27, 2018, at 11:06 a.m., Mr. Murray received a text message from Driver McKenzie: "Plz remember to put the 1:15mins back for me."

s. On or about May 16, 2018, at 3:29 p.m., Mr. Murray received the following text message from Driver Mchchearan: "Remember to fix my time."

t. On or about April 4, 2017, at 10:18 a.m., Mr. Murray received a text message from Driver Lara: "Yo don't forget about my 3 hours."

u. On or about September 11, 2017, at 10:02 a.m., Mr. Murray received a text message from Driver Emile: "Please don't forget my time card.  Mon: holiday pay, Tues: 8:10-8:12, Wed: 8:40-8:36, Thurs: 8:40-10:44, Fri: oph 8hrs."

v. On or about September 20, 2018, at 2:03 p.m., Mr. Murray received a text message from Eli Fernandez: "Kara said she doesn't see the hours on her check for the last 2 days as helping."

w. On or about May 14, 2018, at 7:26 p.m., Mr. Murray received a text message from Driver Darling: "the adjustment is 41 minutes or .68 clicks from Monday last week thank you."

129. These messages show a consistent pattern: drivers' timecards were routinely manipulated to reduce payable hours, and drivers were forced to beg managers to "fix" them.  In many cases, corrections were never made, and drivers were paid for fewer hours than they actually worked.

22

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 23 of 33 PageID #: 144

130. Plaintiffs allege that this practice was not isolated but reflected a deliberate, corporate-wide system of time-shaving and wage theft designed to minimize overtime costs at the expense of drivers.

N.Y. C.P.L.R. LAW § 902 Factors

131. Certification is also appropriate under N.Y. C.P.L.R. LAW § 902. Specifically:

  a. Individual Control. Class Members have little interest in controlling separate actions, given the relatively small value of individual claims compared to the costs of litigation.
  b. Efficiency. Separate suits would be inefficient and impracticable. Class treatment ensures consistent rulings and reduces the burden on the courts.
  c. Existing Litigation. Plaintiffs are not aware of other overlapping state court class actions addressing the same claims during the relevant period.
  d. Forum. Concentrating the litigation in this forum is desirable because UPS operates facilities in Kings County, Plaintiffs worked here, and many Class Members reside here.
  e. Manageability. The action is manageable as a class because liability will be proven through common evidence, including payroll and timekeeping data, corporate policies, and testimony from managers and drivers. Damages can be calculated using UPS's own data, supplemented by representative testimony and reasonable inferences.

NYLL Violations

132. By engaging in the conduct described above, UPS violated the NYLL and its implementing regulations, including but not limited to:

  a. Failing to pay all straight-time wages for hours worked, in violation of NYLL §§ 191 and 652.
  b. Failing to pay overtime wages at one and one-half times the regular rate for hours worked over forty (40) per week, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.
  c. Failing to provide accurate wage statements, in violation of NYLL § 195(3); and
  d. Failing to maintain accurate payroll and time records, in violation of NYLL § 195(4).

133. UPS's violations were willful, intentional, and in reckless disregard of its statutory obligations under the NYLL.

134. As a direct result of UPS's unlawful practices, Plaintiffs and the Class have suffered damages, including unpaid straight-time and overtime wages, statutory penalties, liquidated damages, prejudgment interest, and attorneys' fees and costs as authorized by the NYLL.

135. Plaintiffs and the Class seek judgment against UPS, awarding:

  a. All unpaid wages and overtime.
  b. Statutory damages for wage-statement violations.
  c. Liquidated damages.
  d. Prejudgment interest.
  e. Attorneys' fees and costs; and
  f. Such other legal and equitable relief as the Court deems just and proper.

23

136. Based on the foregoing, the motion to certify the Class must be granted.

137. Plaintiffs, the Class, and all similarly situated employees are damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW FOR FAILURE TO PAY MINIMUM AND STRAIGHT-TIME WAGES
(On behalf of Plaintiff Palaguachi, Plaintiff Santiago, Plaintiff Radwan, Plaintiff Payne, and all similarly situated employees)

138. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

139. Plaintiffs and the Class were employed by UPS as package delivery drivers and performed non-exempt work as defined by the New York Labor Law ("NYLL"). Their duties included transporting, loading, and delivering parcels, interacting with customers, and working extended shifts under the control and direction of UPS management.

140. Plaintiffs and the Class regularly worked well in excess of forty (40) hours per week, often between fifty (50) and ninety (90) hours, yet UPS failed to pay them for all straight-time hours worked and failed to pay overtime compensation at one-and-one-half times their regular hourly rate for hours worked over forty (40), as required by NYLL §§ 190, 652, and 663, and N.Y. Comp. Codes R. & Regs. tit. 12 sec. 142-2.2.

141. UPS's failure to pay overtime compensation was not the result of error or negligence, but rather the product of a deliberate and willful policy and practice of time-shaving, impermissible rounding, off-the-clock work, and manipulation of Global Timecard System ("GTS") entries, all designed to suppress payable hours and minimize payroll costs.

142. UPS's violations were willful within the meaning of NYLL § 663, as UPS knew or recklessly disregarded that Plaintiffs and the Class were entitled to overtime pay under state law and nonetheless continued its unlawful practices.

143. As a direct and proximate result of UPS's unlawful practices, Plaintiffs and the Class have suffered loss of compensation for hours worked, loss of use of wages owed, and other damages.

144. Plaintiffs and the Class are entitled to recover from UPS:

   a. All unpaid straight-time and overtime wages are due under the NYLL.
   b. Liquidated damages equal to 100% of the total unpaid wages, as authorized by NYLL § 663.
   c. statutory damages for wage-statement violations under NYLL § 195.

24

Case 1:25-cv-05548-CHK   Document 1-4   Filed 10/02/25   Page 25 of 33 PageID #: 146

   d. prejudgment and post-judgment interest pursuant to NYLL § 198 and N.Y. C.P.L.R. LAW SEC. 5001-5004; and

   e. reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW
(On behalf of Plaintiff Palaguachi, Plaintiff Santiago, Plaintiff Radwan, Plaintiff Payne, and all similarly situated employees)

145. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

146. The New York Labor Law requires employers to provide employees, at the time of hiring and annually thereafter, a written notice containing essential wage information in the employee's primary language, as required by NYLL § 195(1). Such notice must include, at a minimum:

   a. the employee's rate or rates of pay and the basis thereof (hourly, shift, day, week, salary, piece, commission, or other);

   b. any allowances claimed as part of the minimum wage (including tip, meal, or lodging allowances).

   c. The employer's designated regular payday.

   d. The legal name of the employer and any "doing business as" names used.

   e. The physical address of the employer's main office or principal place of business and any mailing address if different, and

   f. the employer's telephone number.

147. Upon information and belief, UPS failed to provide Plaintiffs and Class Members with the required wage notices upon hiring or at any time during their employment. Notices were not provided in English, Spanish, or Arabic, even though Plaintiffs and many Class Members are native speakers of those languages.

148. Defendants had multiple opportunities to comply with these statutory requirements during onboarding, training, payroll processing, and performance reviews, but they consistently failed to do so.

149. As a result of UPS's failure to provide proper wage notices, Plaintiffs and Class Members were deprived of the information necessary to confirm their wage rates, overtime entitlements, and legal rights.

150. Pursuant to NYLL § 198(1-b), Plaintiffs and Class Members are entitled to statutory damages of fifty dollars ($50) for each workday that the violation occurred, up to a maximum of five thousand dollars ($5,000) per employee, in addition to attorneys' fees, costs, and prejudgment interest.

25

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 26 of 33 PageID #: 147

151.   Plaintiffs and Class Members seek recovery of these statutory damages, together with all other relief authorized by the NYLL, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW

(On behalf of Plaintiff Palaguachi, Plaintiff Santiago, Plaintiff Radwan, Plaintiff Payne, and all similarly situated employees)

152.   Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

153.   New York Labor Law § 195(3) requires that every employer furnish each employee with an accurate wage statement with each payment of wages. Such statements must include, at a minimum:

   a.   The dates of work covered by that payment of wages.
   b.   The name of the employee.
   c.   The name, address, and telephone number of the employer.
   d.   The rate or rates of pay and basis thereof (hourly, shift, day, week, salary, piece, commission, or other).
   e.   Gross wages.
   f.   Deductions.
   g.   Allowances, if any, are claimed as part of the minimum wage.
   h.   Net wages.
   i.   The regular hourly rate or rates of pay.
   j.   The overtime rate or rates of pay.
   k.   The number of regular hours worked, and
   l.   The number of overtime hours worked.

154.   UPS failed to provide Plaintiffs and Class Members with accurate wage statements. Specifically, their wage statements systematically underreported hours worked, excluded overtime hours, reflected reduced totals due to time-shaving and GTS manipulation, and omitted correct overtime rates of pay.

155.   As a result, Plaintiffs and Class Members were deprived of the ability to confirm whether they were being paid properly, detect underpayments, or identify unlawful deductions.

156.   UPS's violations of NYLL § 195(3) were willful and continuous throughout Plaintiffs' employment and across its New York facilities.

157.   Pursuant to NYLL § 198(1-d), Plaintiffs and Class Members are entitled to statutory damages of two hundred fifty dollars ($250) for each workday they were not provided accurate wage statements, up to a maximum of five thousand dollars ($5,000) per employee, together with reasonable attorneys' fees, costs, and prejudgment interest.

26

Case 1:25-cv-05548-CHK     Document 1-4     Filed 10/02/25     Page 27 of 33 PageID #: 148

158.   Plaintiffs and Class Members seek judgment against UPS for all statutory damages available under NYLL § 198(1-d), attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated employees, respectfully request that the Court enter judgment against Defendant United Parcel Service, Inc. ("UPS") as follows:

a) Class Certification:  Certifying this action as a class action pursuant to CPLR § 901, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel; authorizing issuance of notice to all putative Class Members apprising them of the pendency of this action and their right to participate.

b) Declaratory Relief:  Declaring that Defendant:
   a. Violated the minimum wage provisions of the NYLL.
   b. Violated the overtime provisions of the NYLL.
   c. Violated the spread-of-hours provisions of the NYLL.
   d. Violated the timely payment requirements of the NYLL.
   e. violated the notice and recordkeeping requirements of NYLL § 195(1) and § 195(4); and
   f. violated the wage statement provisions of NYLL § 195(3).

c) Injunctive Relief: Issuing a permanent injunction requiring Defendant to:
   a. Cease its unlawful pay, timekeeping, and recordkeeping practices.
   b. Implement accurate, tamper-proof timekeeping systems.
   c. Provide wage notices and wage statements in full compliance with NYLL §§ 195(1) and 195(3).
   d. Provide bilingual (English, Spanish, and Arabic) wage notices where applicable.
   e. Implement training and monitoring procedures to ensure compliance with the NYLL; and
   f. Submit to an independent audit of payroll and timekeeping systems at Defendant's expense.

d) Compensatory Relief:  Awarding Plaintiffs and the Class:
   a. All unpaid straight-time wages.
   b. All unpaid overtime wages are at one and a half times the regular rate.
   c. Spread-of-hours pay for workdays exceeding ten (10) hours.
   d. reimbursement for business expenses wrongfully shifted to employees, including mileage, fuel, and personal vehicle use; and
   e. prejudgment interest on all sums due pursuant to N.Y. C.P.L.R. LAW SEC. 5001-5004.

e) Statutory Damages:  Awarding Plaintiffs and the Class:

27

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 28 of 33 PageID #: 149

    a. statutory damages for Defendant's violation of NYLL § 195(1) (failure to provide wage notices).

    b. statutory damages for Defendant's violation of NYLL § 195(3) (failure to provide accurate wage statements).

    c. liquidated damages equal to one hundred percent (100%) of the unpaid wages and overtime due pursuant to NYLL § 198(1-a) and § 663; and

    d. an automatic fifteen percent (15%) increase in judgment if unpaid ninety (90) days after issuance of judgment or expiration of appeal, pursuant to NYLL § 198(4).

f) **Equitable Relief:**

    a. Ordering restitution and disgorgement of all wages and benefits unlawfully withheld by Defendant.

    b. Directing an equitable accounting of all wages owed; and

    c. Establishing a constructive trust for wages unlawfully withheld.

g) **Attorneys' Fees and Costs:** Awarding Plaintiffs and the Class reasonable attorneys' fees, expert witness fees, costs, and disbursements pursuant to NYLL §§ 198 and 663.

h) **Further Relief:** Awarding such other legal and equitable relief as the Court deems just, proper, and necessary to remedy Defendant's violations of the NYLL and to prevent their recurrence.

Dated: Brooklyn, New York
September 2, 2025

By: Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

28

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 29 of 33 PageID #: 150

## JURY DEMAND

Pursuant to N.Y. C.P.L.R. LAW 4101 and all other applicable provisions of New York law, Plaintiffs, on behalf of themselves and all similarly situated employees, hereby demand a trial by jury on all issues of fact and damages so triable in this action.

Dated: Brooklyn, New York
September 2, 2025

By:  Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

## PRESERVATION NOTICE

The terms "you," "your," or "yours" as used herein refer to the recipient of this letter, the respondents, and any individuals or entities responsible for the custody, control, or management of the information identified below.  This includes, but is not limited to, your officers, directors, agents, employees, administrative assistants, secretaries, information technology personnel, contractors, and third-party vendors.

You are hereby placed on notice and directed to take all necessary steps to prevent the spoliation of evidence.  "Spoliation" is defined as the alteration, modification, deletion, overwriting, destruction, concealment, or loss of any information that may be relevant to the claims, defenses, or issues in this matter.

Failure to comply with this demand may result in sanctions, including but not limited to adverse inference instructions, monetary penalties, or other remedies available under law.  In addition, non-compliance may form the basis of independent claims for spoliation.

### ELECTRONICALLY STORED INFORMATION (ESI)

You are directed to immediately preserve all electronically stored information ("ESI") in your possession, custody, or control, including but not limited to:

- Social media and web-based accounts (e.g., Facebook, Instagram, Twitter, LinkedIn, TikTok, Snapchat, YouTube, Pinterest, Flickr, or any other networking site).
- Emails, voicemail messages, text messages, instant messages, and chat communications (including messaging apps such as WhatsApp, Signal, Telegram, or similar platforms).
- Audio or video recordings, photographs, digital images, and other multimedia files.
- Computer files, including word processing documents, spreadsheets, presentations, databases, logs, archives, and metadata associated with each.
- Portable and external storage devices, including CDs, DVDs, USB drives, flash drives, memory cards, external hard drives, and backup tapes.
- Network and server logs, internet browsing histories (including cookies), system activity logs, and cloud-based storage accounts (e.g., Google Drive, iCloud, Dropbox, OneDrive).

29

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 30 of 33 PageID #: 151

- Contact and relationship management data (e.g., Microsoft Outlook, Google Contacts).
- Calendar entries, scheduling data, and task management software records.

This obligation includes the preservation of passwords, encryption keys, decryption software, network access codes, and any manuals or instructions necessary to access, view, and, if necessary, restore such ESI.

You are further directed to immediately suspend any data destruction, disk optimization, compression, deletion, or backup rotation policies that might result in the alteration or loss of relevant electronic evidence.

<u>PAPER DOCUMENTS</u>

You are also directed to preserve all hard-copy documents in your possession, custody, or control, including but not limited to:

- Emails, text message printouts, reports, notes, memos, and correspondence.
- Paper records, contracts, agreements, and invoices.
- Photographs, handwritten notes, and annotations.
- Investigative files, audit records, and meeting minutes.
- Any other documents pertaining to the parties, witnesses, or issues in this matter.

Where both electronic and paper copies exist, you must preserve both. Electronic documents contain metadata and system-level information not found in printed versions and must be maintained in their original, native format. Paper documents must be preserved in their complete, unaltered form, including marginalia, annotations, highlighting, and handwritten notes.

<u>FUTURE DATA</u>

This preservation obligation extends to all electronic and paper data created after receipt of this letter that is relevant to this controversy. You must take proactive steps to ensure that such evidence is not destroyed, altered, or lost, whether intentionally or inadvertently.

<u>CONTINUING OBLIGATION</u>

The duty to preserve evidence is ongoing and continues until the final resolution of this matter, including the exhaustion of all appeals. You must take reasonable steps to identify, segregate, and secure all potentially relevant data and documents, and ensure that no policies, procedures, or practices result in the alteration or destruction of evidence.

Brooklyn, New York
Dated: September 2, 2025

By: Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

30

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 31 of 33 PageID #: 152

## DEMAND FOR INSURANCE COVERAGE

Pursuant to N.Y. C.P.L.R. Law 3101 and all other applicable provisions of New York law, Plaintiffs hereby demand that Defendants produce, within thirty (30) days of service of this Complaint, complete copies of all insurance policies, declaration sheets, riders, endorsements, and any agreements that may afford coverage for the claims alleged herein. This demand includes, but is not limited to, primary, excess, umbrella, or any other applicable liability insurance policies in effect during the relevant period.

Brooklyn, New York

Dated: September 2, 2025

By: Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*

Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

31

Case 1:25-cv-05548-CHK   Document 1-4   Filed 10/02/25   Page 32 of 33 PageID #: 153

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

|  |  |
|---|---|
| CARLOS PALAGUACHI, ROBERT SANTIAGO, AHMED RADWAN, and WARREN PAYNE, *individually and on behalf of others similarly situated,* <br><br> Plaintiffs, <br><br> -against- <br><br> UNITED PARCELS SERVICE, INC., <br> Defendant. | Index Number: <br> **Plaintiff designates** <br> **Kings County** <br> **as the venue for the trial.** <br><br><br> **ATTORNEY VERIFICATION** |

To the above-named Defendant (s):

I, Tyrone A. Blackburn, Esq., being duly admitted to practice law in the State of New York, affirm the following under penalty of perjury pursuant to N.Y. C.P.L.R. Law 3020:

I am the attorney for Plaintiffs in the within action. I have read the foregoing Complaint and know the contents thereof. The same is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true. The grounds of my belief as to all matters not stated upon my knowledge are communications, records, and investigations conducted in connection with this action.

I have reviewed the facts of this case and, based upon that review, I conclude that there is a reasonable basis for the commencement of this action.

Brooklyn, New York
Dated: September 2, 2025

By:  Tyrone A. Blackburn, Esq.

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432

32

Case 1:25-cv-05548-CHK    Document 1-4    Filed 10/02/25    Page 33 of 33 PageID #: 154

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF KINGS, CIVIL TERM

| | |
|---|---|
| **CARLOS PALAGUACHI; et al.** | Hearing Date: |
| Plaintiff/Petitioner | INDEX NO: **530162/2025** |
| vs. | Index Date: **09/03/2025** |
| **UNITED PARCELS SERVICE, INC.** | AFFIRMATION OF SERVICE OF: |
| Defendant/Respondent | SUMMONS; CLASS ACTION COMPLAINT; ATTORNEY VERIFICATION |

Received by **Francisco Cruz**, on the **3rd day of September, 2025 at 8:42 PM** to be served upon **UNITED PARCEL SERVICE GENERAL SERVICES CO. C/O CORPORATION SERVICE COMPANY c/o CORPORATION SERVICE COMPANY, Registered Agent at 80 State St, Albany, Albany County, NY 12207.**
The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **4th day of September, 2025 at 12:15 PM** at the address of **80 State St, Albany, Albany County, NY 12207,** this affiant served the **SUMMONS; CLASS ACTION COMPLAINT; ATTORNEY VERIFICATION** upon **UNITED PARCEL SERVICE GENERAL SERVICES CO. C/O CORPORATION SERVICE COMPANY c/o CORPORATION SERVICE COMPANY, Registered Agent** in the manner described below:

**CORPORATE SERVICE**, by personally delivering 1 true and correct copy(ies) of the **SUMMONS; CLASS ACTION COMPLAINT; ATTORNEY VERIFICATION**, with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS: **CORPORATION SERVICE COMPANY, Registered Agent, I delivered the documents to CORPORATION SERVICE COMPANY, Registered Agent with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 6'0"-6'2" tall and weighing 200-240 lbs with a beard.**

**The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.**

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on **Sept. 4, 2025** .

_____
**Francisco Cruz, NY**
ABC Legal Services, LLC
DCA Lic. #1380619 Exp. 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

Page 1 of 1
FOR: **T. A. Blackburn Law, PLLC.**
REF: **CARLOS PALAGUACHI et al v. UNITED PARCEL SERVICE, INC.**

Tracking #: **0184993078**

1 of 1