**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
*Attorneys at Law*
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: 973-656-1600
Facsimile: 973-656-1611
www.ogletree.com

Michael Westwood-Booth
(973) 385-1840
michael.westwood-booth@ogletree.com

**LOCAL CIVIL RULE 37.2**
**DISCOVERY DISPUTE LETTER**

November 5, 2026

**Via ECF Filing**
The Honorable Clay H. Kaminsky, U.S.M.J.
United States District Court,
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**RE: Palaguachi, et al. v. United Parcel Service, Inc.**
**Civ. Act. No.: 1:25-cv-05548-CHK**

Dear Judge Kaminsky,

We represent Defendant United Parcel Service, Inc. ("UPS") in the above-referenced action. Per Local Civil Rule 37.2, and because remaining Plaintiff Robert Santiago did not respond to UPS's efforts to draft a joint discovery dispute letter, UPS submits this letter respectfully requesting the Court's resolution of a discovery dispute concerning Mr. Santiago's (1) deposition appearance; and (2) responses to UPS's Requests for Production ("RFPs"), Interrogatories, and Requests for Admission ("RFAs") (collectively, "Discovery Requests").

By way of background, Mr. Santiago, individually and on behalf of a putative class of similarly situated "delivery drivers," alleges that UPS violated the New York Labor Law by failing to: pay minimum wage, pay overtime, spread of hours pay, and provide accurate wage statements. UPS denies these allegations and intends to assert all viable defenses. The deadline to conduct Phase 1 discovery related to the Named Plaintiffs' individual claims, the policies and practices alleged to have given rise to those claims, and the total number of members of the putative class has long passed. [*See* D.E.s April 2, 2026 and July 23, 2026 Orders.]

Yet, to date, Mr. Santiago has **not**: appeared for his duly noticed deposition, conducted a reasonable search to locate documents responsive to multiple RFPs, produced *a single responsive document,* or provided full and complete answers to multiple Interrogatories and RFAs. (*See generally* Ex. A, September 9, 2026 Discovery Deficiency Letter and Subsequent Meet-and-Confer-Related Communications.) Accordingly, following UPS's futile efforts to resolve this dispute in good faith (*see* Ex. A), UPS respectfully seeks an order requiring Mr. Santiago to: (1) appear for his deposition; and (2) provide full and complete supplemental responses to UPS's Discovery Requests by a date certain.

Regarding Mr. Santiago's deposition, on June 15, 2026, UPS noticed Mr. Santiago's deposition for July 15, which was rescheduled to July 28 at Plaintiff's counsel's request. (*See generally* Ex. B, Deposition-Related Communications.) On July 23, the Court extended Phase 1 discovery to August 3 "for the limited purpose of taking the deposition of Plaintiff Santiago." The day before the deposition, Plaintiff's counsel told UPS that *Mr. Palaguachi* was unavailable because he had the flu; when reminded that *Mr. Santiago* had been noticed, counsel said he would "call back," but never did. On July 28, neither Mr. Santiago nor his counsel appeared. Plaintiff's counsel also did not respond to UPS's email and two phone calls before UPS closed the deposition at 11:00 a.m. (*Id.*) Plaintiff's counsel subsequently admitted that his misunderstanding caused Mr. Santiago's failure to appear. (*Id.*) He initially offered to reschedule Mr. Santiago's deposition after the extended Phase 1 discovery deadline, but when reminded of that deadline, offered to produce Mr. Santiago on a single business day's notice (when UPS's counsel was unavailable). (*Id.*) Given Plaintiff's pattern of discovery failures and the ample notice that Plaintiff's counsel received for Mr. Santiago's deposition, counsel's "mistake" is not a reasonable, good-faith excuse. Mr. Santiago must be deposed promptly.

Regarding Mr. Santiago's RFP responses, his responses to RFP Nos. 1-2, 15, and 36-37 concede that no reasonable search has been conducted and suggest only that production may occur after Phase 1 discovery has long closed. (*See* Ex. C, Excerpts of RFP Responses and Complaint.) Likewise, Mr. Santiago's responses to RFP Nos. 3-5 and 13-14 claim that he is "not in possess [sic] of any responsive documents," despite references to such documents in paragraph 50 of his Complaint (the "delivery driver" job description) (*see* Ex. C) and his answers to Interrogatory Nos. 6 and 12 (purported text messages regarding the timekeeping allegations) (*see* Ex. D, Excerpts of Answers to Interrogatories). These answers confirm that Mr. Santiago had multiple relevant communications with supervisors and other drivers, yet he admits that he has not searched his phone and has not produced these documents, which are ostensibly in his possession. Mr. Santiago has been suing UPS *for more than six years*; his concession that he has conducted no reasonable search for responsive documents, and his failure to produce a single responsive document,[1] violate Rules 26 and 34 and are patently unacceptable. *See Chow v. Sentosacare, LLC*, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020).

Regarding Mr. Santiago's answers to Interrogatories, his answers to Interrogatory Nos. 2-7, 11-12, and 15 omit relevant information, including: (Nos. 2, 11) the contact information and knowledge of the persons who provided information contained in the Complaint or who have knowledge of Mr. Santiago's timekeeping allegations; (No. 3) the recipients, responses, and dates of relevant complaints that he or putative class members made to UPS; (No. 4) a complete calculation of his unpaid hours and damages; (No. 5) the identity of delivery drivers who discussed the timekeeping allegations with him; (Nos. 6, 12) the substance of his communications with UPS personnel about the timekeeping allegations; (No. 7) his social-media accounts since 2017 and whether he has posted about his UPS employment on them; and (No. 15) specific instances of timecard alteration and the individual(s) responsible. (*See* Ex. D.)

---

[1]Although perhaps not a "deficiency," Mr. Santiago also claims not to possess any materials responsive to thirty (30) of UPS's RFPs. (*See* Ex. A at 5-6.)

Regarding Mr. Santiago's RFA responses, his responses to RFA Nos. 6, 30, 34, 36, 39, 41, 50-53, 64, 66, 71-72, 74, 82, 86, and 91 are evasive because they substantively rephrase or omit essential content of the RFAs. For example, RFA No. 64 requests that he admit "the 2018 Master CBA, Article 16, contained a 'Paid for Time' provision *that states all 'employees covered by this Agreement shall be paid for all time spent in service of the Employer.'*" Mr. Santiago rephrases this request as "Admit that the 2018 Master CBA, Article 16, contained a 'Paid for Time' provision *requiring compensation from registration in until release from duty*," and then admits only that Article 16 "contains the quoted language." His response thus addresses a materially different compensability concept and improperly avoids the actual content of the relevant CBA provisions bearing on LMRA preemption. (*See* Ex. E, RFA Content Comparison.)

Mr. Santiago's responses to RFA Nos. 67-70 are evasive because, rather than fairly responding to the substance of each request, they assert a single, grouped legal objection to requests applying law to fact, which Rule 36(a)(1)(A) expressly permits. (*See* Ex. F, Excerpts of Responses to Requests for Admissions.) Those RFAs asked Mr. Santiago to admit or deny whether the resolution of his minimum wage, straight time, and overtime claims requires reference to, and interpretation of, 2018 Master CBA provisions concerning the compensability of his work hours. Mr. Santiago denies each request on the ground that "Plaintiff's NYLL claims are independent statutory rights that do not require CBA interpretation," but he does not explain how the "independent statutory" compensation owed to him can be resolved without reference to these facially relevant CBA provisions. Nor do his assertions that LMRA preemption is the "central legal issue" in UPS's motion to dismiss (which is inaccurate), and that Judge Brodie rejected LMRA preemption in *Murray*, excuse his responses: UPS's partially granted motion to dismiss did not raise LMRA preemption at all, and Judge Brodie's *Murray* ruling merely allowed the *Murray* claims to proceed to discovery; it did not hold that UPS was foreclosed from raising LMRA preemption as a defense after the pleadings stage. These CBA provisions are thus directly at issue.

Mr. Santiago's responses to RFA Nos. 74-78 and 82-85 are also evasive. (*See* Ex. F.) These RFAs asked whether the hourly and overtime rates set forth in the CBA, reflected on his wage statements, and actually paid to him exceeded the New York minimum wage or 1.5 times the New York minimum wage, and whether Mr. Santiago was aware of them. Mr. Santiago claims the "contractual rate of pay" on his wage statements did not exceed the New York minimum wage, but does not explain whether "contractual rate" means his regular hourly rate of pay or the rate of pay he actually received. He also fails to address the hourly and overtime rates set forth in the CBA entirely, and he claims not to know whether his rate of pay (as reflected in the CBA or wage statements, or as actually received) exceeded the minimum wage or overtime rate due to UPS's "time shaving and [wage theft]." But even if, as Mr. Santiago alleges, he was not paid for all hours worked, his hourly rate did not change with the number of hours recorded. Further, both the regular hourly wage rate and overtime rate set forth in the CBA are fixed numbers that time shaving or wage theft cannot affect. Thus, Mr. Santiago's alleged factual disputes do not prevent him from answering the RFAs.

UPS thanks the Court for its attention to this matter.

Respectfully submitted,

*/s/ Michael Westwood-Booth*

Michael Westwood-Booth, Esq.

MWB:ss